**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
IN RE:                        ) CHAPTER 11
                              )
SEMCRUDE, L.P., et al.,       ) Case No. 08-11525 (BLS)
                              ) (Jointly Administered)
                              )
              Debtors.        )
_____ )
                              )
VESS OIL CORPORATION,         )
                              )
              Plaintiff,      )
                              )
     v.                       )
                              ) Adversary No. 08-51142
                              )
SEMCRUDE, L.P., and           )
EAGLWING, L.P.,               )
                              )
              Defendants.     )
```

**OPINION**[1]

Before the Court are cross-motions for summary judgment and several ancillary motions and objections. These include the motion for summary judgment (the "Plaintiff's Motion") [Docket No. 56] filed by plaintiff Vess Oil Corporation (the "Plaintiff" or "Vess Oil"); the motion for summary judgment (the "Defendants' Motion") [Docket No. 58] filed by the defendants in this adversary proceeding, SemGroup, L.P. and Eaglwing, L.P. ("SemGroup" and "Eaglwing," and collectively referred to hereinafter as the "Debtors" or the "Defendants"); and motions to

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

strike the affidavit and supplemental affidavit of J. Michael Vess (collectively referred to hereinafter as the "Motions to Strike") [Docket Nos. 63 and 77, respectively]. Also before the Court are objections to deposition testimony offered in support of the Plaintiff's Motion.

The key issue in this dispute is whether the Defendants hold certain funds in trust for the Plaintiff, thus entitling the Plaintiff to immediate recovery of the entirety of the funds, or whether the Plaintiff is simply a general unsecured creditor of the Defendants. For the following reasons, the Court finds that the Defendants do indeed hold the disputed funds in trust for the Plaintiff. Accordingly, the Court will grant the Plaintiff's Motion and deny the Defendants' Motion.

## I. BACKGROUND

In 2003, Vess Oil became the operator of certain oil and gas wells located in Texas, including those located in the Kurten Field in Brazos County, Texas (the "Kurten Field"). Vess Oil also has an affiliated ownership in part of the Kurten Field under the name VOC Brazos Energy Partners, L.P. ("VOC Brazos").

As the operator of the Kurten Field wells, Vess Oil markets the oil and gas from the Kurten Field wells and arranges for its sale on behalf of numerous royalty owners and working interest owners, including VOC Brazos, each of whom is entitled to payments derived from the sale of oil and gas products from the

2

Kurten Field. The amount of these payments varies based on the size of the respective shares held by the royalty owners and working interest owners.

When Vess Oil became the operator of the Kurten Field wells in 2003, it did not have the back-office capabilities to maintain division orders and manage the distribution of funds to the royalty owners and working interest owners. Having previously sold oil from other fields to subsidiaries and affiliates of SemGroup, Vess Oil was aware that SemGroup had the experience and ability to handle the distribution of funds and maintenance of division orders on properties similar to Kurten Field. Accordingly, Vess Oil contacted SemGroup and asked for assistance in providing these services. Vess Oil was directed to Eaglwing.

After several telephone conversations between J. Michael Vess ("Mr. Vess") (on behalf of Vess Oil) and Kevin Foxx ("Mr. Foxx") (on behalf of Eaglwing), Vess Oil and Eaglwing then entered into an agreement (the "Oral Agreement"). Defendant SemGroup was not a party to the Oral Agreement.

Pursuant to the Oral Agreement, Eaglwing agreed to receive the funds generated by all monthly sales of oil and gas products from the Kurten Field wells to third parties. Vess Oil forwarded the monthly gas revenue to Eaglwing each month directly, and instructed the purchasers of the Kurten Field oil – originally BP and later Teppco – to forward the monthly oil revenue to

Eaglwing. Eagwling then placed these funds into its Bank of Oklahoma operating account in Tulsa each month before paying out one-hundred percent of the funds, less small amounts of money that were to remain in its bank account pending clear title (commonly referred to as "suspense money"), to the Kurten Field royalty owners and working interest owners. To the extent that Eaglwing could not pay a Kurten Field interest owner because their interest was in suspense, Eaglwing retained and accumulated those funds until payment could be made. At no time did Eaglwing or SemGroup purchase oil or gas from the Kurten Field wells.

An unrelated third party, Iberia Management Systems ("Iberia"), was selected by Eaglwing to maintain a list of Kurten Field interest owners along with their respective fractional interests so that a proper distribution could be made each month. Iberia also prepared and mailed checks each month, drafted on Eaglwing's operating account and made payable to the Kurten Field interest owners. For those Kurten Field interest owners who preferred to be paid by monthly wire transfer, Iberia gave instructions to Eaglwing regarding the amount of each transfer, and Eaglwing sent the wires each month.

Iberia performed all of these services for a variable monthly fee that averaged $1,791 each month between August 2003 and April 2005. Vess Oil initially paid Iberia's monthly fee directly. In May 2005, however, Mr. Vess contacted Mr. Foxx to

request that Eaglwing begin paying Iberia instead.  The reason for this request was that Eaglwing was earning interest on the funds received from Vess Oil and Teppco for approximately 30 days each payment cycle – interest to which Mr. Vess claimed Vess Oil was entitled.  Following this request, Mr. Foxx agreed that Eaglwing would pay the monthly fee in exchange for retaining the interest Eaglwing was earning on holding the funds received from Vess Oil and Teppco before distributing these monies to the Kurten Field interest owners.  This new arrangement was facilitated by the fact that both Mr. Vess and Mr. Foxx regarded Iberia's monthly fee and the interest earned on the Kurten Field proceeds to be a "wash."  (See Vess Dep. 316:21-323:11, Dec. 8, 2008; Foxx. Dep. 50:12-21, 75:7-11, March 2, 2009).

The record reflects that throughout the parties' relationship, Vess Oil never told anyone at Eaglwing to place the funds into an escrow account, and did not instruct Eaglwing to refrain from commingling the Kurten Field monies with other Eaglwing funds.  Along similar lines, no one from Eaglwing ever promised Vess Oil that the funds would be placed in a segregated account or that there would be any restrictions on the use of the funds by Eaglwing, and Mr. Vess did not believe that the funds were being kept in a segregated account by Eaglwing.  Despite this intermingling of funds, however, the only persons involved in the making of the Oral Agreement – Mike Vess and Kevin Foxx –

have each testified that the Kurten Field proceeds never belonged to Defendants.  (See Foxx Dep. 21:15-22, March 2, 2009; Vess Dep. 285:11-13, Dec. 8, 2008).  According to Mr. Foxx, Eaglwing would have returned the Kurten Field proceeds to Vess Oil at any time before July 2008, had Vess Oil asked for their return, because Eaglwing was merely holding them and distributing them each month in an attempt to provide an accommodation to Vess Oil, whom it regarded as a good customer on other deals.  (Foxx Dep. 65:10-23, March 2, 2009).

Despite the fact it was never memorialized in a written agreement, Vess Oil continued to use this payment structure to distribute the funds it collected in its role as operator of the Kurten Field wells.  On July 22, 2008 (the "Petition Date"), however, SemGroup and certain direct and indirect subsidiaries, including Eaglwing, each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code").  Following the Petition Date, the Defendants refused to provide either Vess Oil or the Kurten Field interest owners with: (i) the Kurten Field proceeds for the production month of May, 2008, which amounted to $2,442,325.65; and (ii) Kurten Field proceeds from previous months held in suspense due to title or other uncleared issues, which amounted to $290,281.93.  Thus, the total amount undistributed to Kurten Field interest owners in July, 2008 was

$2,732,607.58.[2]

The Defendants contend that distributing these funds in accordance with their normal payment schedule would have been improper because they were in a debtor-creditor relationship with Vess Oil and the Kurten Field interest owners. The filing of their bankruptcy petitions, the Defendants reason, thus made these funds property of the bankruptcy estate that could not be distributed absent an order of this Court. Accordingly, the Defendants have offered Vess Oil an allowed, general unsecured claim of $2,732,607.58.

Vess Oil argues that the Defendants merely held these funds in either a constructive or resulting trust for its benefit before distributing them to the Kurten Field interest owners, however. If this is true, the funds are not part of the Defendants' bankruptcy estates and should be returned to Vess Oil or distributed to the Kurten Field interest owners. Vess Oil has refused the Defendants' offer of an allowed unsecured claim.

This matter has been fully briefed and argued. It is ripe for decision.

---

[2] The Defendants have stipulated that Eaglwing's Bank of Oklahoma operating account never contained less than this amount between June 20, 2008 and August 6, 2008. The Defendants also acknowledge they can trace all of the Kurten Field proceeds at issue through the Petition Date. Thus, the Defendants agree they have no tracing defense. (See Ward Dep. 12:24-15:2; 71:20-73:25, Feb. 19, 2009).

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

## III. STANDARD OF REVIEW

The parties have filed cross-motions for summary judgment on Vess Oil's complaint. The Court notes that "the standards under which to grant or deny summary judgment do not change because cross-motions are filed." In re U.S. Wireless Corp., Inc., 386 B.R. 556, 560 (Bankr. D. Del. 2008).

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. The Court must view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party. In re Elrod Holdings Corp., 394 B.R. 760, 763 (Bankr. D. Del. 2008).

In order to avoid summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. U.S. Wireless, 386 B.R. at 559. An

issue of material fact is genuine if the factfinder could return a judgment for the nonmoving party on the disputed issue. Elrod Holdings, 394 B.R. at 763. If the nonmoving party fails to present facts establishing a genuine issue for trial, the moving party is entitled to summary judgment. Thus, the Court must ask: "(1) is there no genuine issue of material fact and (2) is one party entitled to judgment as a matter of law?" Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3rd Cir. 1992) (quoting Country Floors, Inc. v. Gepner, 930 F.2d 1056, 1060 (3d Cir. 1991)).

## IV. DISCUSSION

The parties agree that applicable state law, not federal law, determines whether the Defendants held the funds in question in any form of trust for Vess Oil as of the Petition Date. The parties disagree on the issue of which state's trust law governs their relationship. As noted in the parties' briefs, it could be argued that either Kansas, Oklahoma, or Texas law applies. The Court need not address this choice of law dispute, however, because the Court finds that Vess Oil is entitled to a resulting trust under the laws of each of the three states.

Under Texas law, "[a] resulting trust typically carries an implied intention to create a trust." Savell v. Savell, 837 S.W.2d 836, 839 (Tex. App. 1992) (citing Sohio Petroleum Co. v. Jurek, 248 S.W.2d 294, 297 (Tex. Civ. App. 1952)). Thus, because

9

"no express contract is involved, a resulting trust is strictly a creature of equity." Id. (citing Sims v. Duncan, 195 S.W.2d 156, 161 (Tex. Civ. App. 1946)).

When considering whether a resulting trust is proper under Texas law, the Court "must look only to the circumstances existing at the time of the transaction to determine whether a trust was intended." Id. (citing Estate of Lee v. Ring, 734 S.W.2d 123 (Tex. App. 1987)). The Court is also cognizant of the fact that Texas law is suspicious of resulting trusts and, consequently, "a heavy burden of proof is placed on the party attempting to establish the existence of one." Hubbard v. Shankle, 138 S.W.3d 474, 486 (Tex. App. 2004) (collecting cases).

In Oklahoma, "[r]esulting trusts are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title." Perdue v. Hartman, 408 P.2d 293, 297 (Okla. 1965) (citing Wadsworth v. Courtney, 393 P.2d 530 (Okla. 1964)); see also Cacy v. Cacy, 619 P.2d 200, 202-03 (Okla. 1980) (noting that this "[i]ntent can be actual, or implied from the nature of the transaction and the facts surrounding it"). "In such case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom

equity deems to be the real owner." Perdue, 408 P.2d at 297. As this Court has previously noted, however, obtaining a resulting trust under Oklahoma law is no easy task; the burden of proving an implied trust is on Vess Oil because it is the party asserting one exists, and proof of the resulting trust must be "clear, unequivocal, and decisive." Samson Resources Co. v. SemCrude, L.P. (In re SemCrude), 407 B.R. 140, 151 (Bankr. D. Del. 2009) (quoting Gazalski v. Goss (In Matter of Estate of Ingram), 874 P.2d 1282, 1287 (Okla. 1994)).

Recent resulting trust cases in Kansas,[3] meanwhile, have only addressed situations where consideration for property is paid by one person and legal title, typically to land, is taken in the name of another. Such factual situations – which are quite different from the instant dispute – are subject to special statutory rules in Kansas that do not apply here. See Kan. Stat. Ann. § 58-2406. To find the Kansas common law rule that governs the instant dispute, the Court must look to the following language, which was quoted favorably by the Kansas Supreme Court in 1944:

> [t]he doctrine of resulting trusts is founded upon the presumed intention of the parties; and, as a general rule, it arises where, and only where, such may be

---

[3] The Defendants argue Texas law governs this matter, while Vess Oil argues that Oklahoma law is controlling. Neither side argues Kansas law controls, but the Court will also examine Kansas law because the parties have included discussions of Kansas trust law in some of their briefs to the Court.

> reasonably presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which it is sought to be established. In a resulting trust there is always the element of an intention to create a trust, which is not expressed but is implied or presumed by law from the attendant circumstances and without regard to the particular intention of the parties, so, in a proper case, the trust may exist notwithstanding the party to be charged as trustee may never have agreed to the trust and may have really intended to resist it. However, since a resulting trust is designed to carry the presumptive intention of the parties into effect, not to defeat it, it must be consistent with the intention of the parties at the time of the acquisition of the property and will not be presumed or implied unless taking all the circumstances together it is the fair and reasonable interpretation of their acts and transactions.

Herd v. Chambers, 149 P.2d 583, 593-94 (Kan. 1944) (quoting 65 C.J.S. Trusts § 141)).  Furthermore, only "the usual burden in civil cases" – namely, the preponderance of the evidence standard – must be met by the party asserting a resulting trust. University State Bank v. Blevins, 605 P.2d 91, 94 (Kan. 1980).

Applying these three states' legal standards for finding a resulting trust, and considering the undisputed facts contained in the record, the Court finds that Vess Oil is entitled to summary judgment on its resulting trust claim.  The Court is convinced that the parties never intended for the proceeds from the Kurten Field wells to belong to the Defendants during the period between the time they were forwarded to the Defendants and the time they were scheduled to be disbursed by the Defendants. Nor was a debtor-creditor relationship intended.  Rather, the

12

facts and the overarching structure of the parties' relationship both indicate that the funds in question were simply transferred to Eaglwing so as to more easily facilitate payment to the Kurten Field interest owners, while Vess Oil retained beneficial ownership in the funds.

The Court's conclusion is supported by, among other things, the parties' treatment of the interest earned during the roughly 30 days each payment cycle when the disputed funds were in Eaglwing's Oklahoma operating account.  In 2005, at the time the Oral Agreement was renegotiated, it is clear that both Mr. Vess and Mr. Foxx each considered the interest earned on the Kurten Field proceeds while in Eaglwing's operating account to belong to Vess Oil, not Eaglwing.  Had Mr. Vess, on behalf of Vess Oil, and Mr. Foxx, on behalf of Eaglwing, not considered the interest earnings to belong to Vess Oil, they would not have agreed that Eaglwing should begin paying Iberia each month in exchange for Eaglwing keeping the interest earnings.  A fortiori, if the interest earned on these funds was treated as belonging to Vess Oil, then the principal which earned the interest belonged to Vess Oil as well.

Further support for the Court's conclusion is found in the fact that the only persons involved in the making of the Oral Agreement – Mr. Vess and Mr. Foxx – have each testified that the Kurten Field proceeds never belonged to Defendants.  Both Mr.

13

Vess and Mr. Foxx have testified that they did not believe they were creating a debtor-creditor relationship when they negotiated the Oral Agreement or the revisions to the Oral Agreement. Instead, both believed that Eaglwing was acting as a pass-through entity of sorts, receiving the proceeds of the Kurten Field wells solely for the purpose of distributing them to third parties. Because Mr. Vess and Mr. Foxx were the parties who negotiated the Oral Agreement, the professed intent of both men is highly probative in answering the question of whether Vess Oil and Eaglwing (really Mr. Vess and Mr. Foxx) intended a trust or debtor-creditor relationship, and both indicate that a trust relationship was intended.

For instance, Mr. Foxx has testified that he and the Defendants "were providing a service that was just a pass-through." (Foxx Dep. 21:11-14, March 2, 2009). Because, in Mr. Foxx's words, the Defendants "never did anything other than get the money and then distribute it," Mr. Foxx has testified that "to see that the money is being held up as if it didn't belong to Vess seems silly." (Id. at 21:15-22). Mr. Foxx also agreed, when asked under oath, that "it was always Vess's money that was being received" and that SemCrude was "simply providing a service because [Vess] was a good customer on other deals."[4]

---

[4] Defendants have objected to the question that elicited the latter statement on the grounds that it calls for a legal conclusion. The Court will overrule the objection, however,

Mr. Vess, meanwhile, testified that he expected the funds in question "to be managed by Eaglwing for the account of Vess Oil Corporation until distribution." (Vess Dep. 285:11-13, Dec. 8, 2008). Mr. Vess also testified that while he did not expect the Defendants to segregate the funds in question, he did expect the Defendants to have an ongoing duty to account for the funds. (Id. at 290:8-18).

Given this overwhelming evidence,[5] the Court finds that Vess Oil has carried the heavy burden of proof it bears in establishing that the parties intended to create a trust relationship when they adopted the Oral Agreement. Accordingly,

---

because Mr. Foxx's response speaks not to a legal conclusion, but to his intent at the time he negotiated and entered into the Oral Agreement on behalf of the Defendants. As noted above, the intent of the parties to create a trust is of critical importance in this case, and the Court can think of little evidence that could speak more authoritatively to the intent of Mr. Foxx than Mr. Foxx's own understanding of what he intended to create when he made the Oral Agreement. Accordingly, it would be improper for the Court to disallow Mr. Foxx's testimony regarding whether he believes he created a trust when he made the Oral Agreement on behalf of the Defendants.

[5] This is a point that should not be understated. This Court has noted on previous occasions that parties seeking to prove a trust relationship typically bear a very heavy burden of proof under both state and federal law. See SemCrude, 407 B.R. at 151-53 (rejecting resulting trust argument) and Asurion Ins. Servs., Inc. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.), 377 B.R. 478, 484 (Bankr. D. Del. 2007)(rejecting constructive trust argument and noting that commercial parties are presumed to be in a debtor-creditor relationship, absent substantial evidence that a different (viz., fiduciary) relationship was intended). Unlike those other cases, however, there is no doubt that a resulting trust is warranted here based on the facts of this case.

the Court finds imposition of a resulting trust appropriate in this case.

The effect of the Court's finding the Plaintiff is entitled to a resulting trust is not disputed. Section 541(a)(1) of the Code provides that the bankruptcy estate is composed of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Any power that the debtor may exercise solely for the benefit of an entity other than the debtor," however, is excluded from the bankruptcy estate. 11 U.S.C. § 541(b)(1). Property over which the bankrupt holds "only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Consequently, funds in the Defendants' possession held for third parties, such as the funds held in resulting trust for Vess Oil, are not part of the Defendants' bankruptcy estates. See Begier v. Internal Revenue Service, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.10 (1983) (noting that "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition" from

16

the bankruptcy estate).

Because the disputed funds are not part of the Defendants' bankruptcy estates, but are in fact Vess Oil's property held in resulting trust, the funds must be returned to Vess Oil. Plaintiff's Motion will therefore be granted.[6]

## V. CONCLUSION

For the foregoing reasons, the Court finds that the Defendants hold certain funds in resulting trust for the Plaintiff based on the undisputed facts of this case. Thus, these funds are not part of the Defendants' bankruptcy estates and should be turned over to the Plaintiff immediately. Accordingly, the Court will grant the Plaintiff's Motion and deny the Defendants' Motion.

An appropriate order follows.

By the Court,

_____

Dated: October 5, 2009        Brendan Linehan Shannon
                              United States Bankruptcy Judge

---

[6] Because the Court finds Vess Oil is entitled to summary judgment on its resulting trust claim, it does not reach Vess Oil's constructive trust claim.

17